Ralph S. ABERNATHY, Administrator of the Estate of Eural Frank Abernathy, Plaintiff,

v.

SCHENLEY INDUSTRIES, INC., et al., Defendants.

No. C–C–75–387.

United States District Court, W. D. North Carolina, Charlotte Division.

July 31, 1976 and Sept. 27, 1976.

Ronald Williams, Charlotte, N.C., for plaintiff.

Hunter M. Jones, Jones, Hewson & Woolard, Charlotte, N.C., for Schenley defendants.

John G. Golding, Golding, Crews, Meekins, Gordon & Gray, Charlotte, N.C., for defendant Mecklenburg Board of ABC.

James Wallace, Jr., Associate Atty. Gen. of N.C., Raleigh, N.C., for defendant North Carolina Board of Alcoholic Beverage Control and State of North Carolina.

## ORDER

McMILLAN, District Judge.

Plaintiff's decedent allegedly drank too much of defendants' good whiskey, too fast, and died of acute ethanol poisoning. Plaintiff's complaint, as it *now* stands, alleges violation of 15 U.S.C. § 2068 (Consumer Product Safety Act), 21 U.S.C. § 331 (Adulterated or Misbranded Food and Drugs), and 27 U.S.C. § 205(e) (Alcohol Labeling), as well as a products liability action under North Carolina law.

Plaintiff says that defendants breached these statutes, and sold a defective product, because they failed to place a label on the whiskey bottle plaintiff's decedent purchased, that warned him of the risk of acute ethanol poisoning.

All defendants have moved for dismissal. The grounds urged are failure to state a claim, lack of personal and subject matter jurisdiction, the Eleventh Amendment, and sovereign immunity. Plaintiff has made

more motions to amend, and a motion to reconsider the previous dismissal of the State of North Carolina.

The court held hearings on all then pending motions, ruled on several discovery motions, and took the dismissal motions under advisement.

The court has concluded that suit against defendant North Carolina Board of Alcohol Control is barred by the Eleventh Amendment because this, in effect, is a suit against the state. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); North Carolina General Statutes § 18A–14.

Defendant Mecklenburg Board of Alcoholic Beverage Control is not entitled to the same immunity, however. Counties, and other political subdivisions, derive no protection from the Eleventh Amendment. *Hopkins v. Clemson Agricultural College,* 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890 (1911).

Moreover, the Board is not immune from the state cause of action. North Carolina General Statutes § 153A–435.

The complaint does state a claim under North Carolina law, and it apparently does state a claim under 15 U.S.C. § 2068, and 27 U.S.C. § 205(e), because of 27 C.F.R. § 5.42(a)(1). It does not state a claim under 21 U.S.C. § 331, because the whiskey was neither misbranded, within the meaning of § 343, nor adulterated, within the meaning of § 351.

I have made the decision about 15 U.S.C. § 2068, and 27 U.S.C. § 205(e), in the absence of legislative history, but under the guidelines announced in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). If any defendant is able to supply any legislative history that tends to show Congress did *not* intend to allow a private right of action under the statutes, I will reconsider the motions. The defeated bills which would have required warnings are no help, however, because they supply no insight into whether Congress intended to allow private actions, and they were aimed at chronic poisoning, not acute poisoning.

Because I have concluded that the complaint states a federal claim, there is subject matter jurisdiction, and there is pendent jurisdiction over the state claims, as to the Board, and diversity jurisdiction as to the Schenley defendants.

Plaintiff has filed motions to amend on May 3, 1976 (two motions), May 28, 1976, June 4, 1976, June 11, 1976, and June 28, 1976. No defendant has objected to these motions, except the motions of May 28, June 11 and June 28, 1976, which seek to bring in additional defendants, on a new theory of liability. I want to have a hearing on the question of new parties and theories, before deciding that question.

IT IS THEREFORE ORDERED:

1. That defendant North Carolina Board of Alcohol Control's motion to dismiss is allowed.

2. That defendant Mecklenburg Board of Alcohol Beverage Control's motion to dismiss is denied.

3. That the motions of the Schenley defendants to dismiss are denied.

4. That plaintiff's motions to amend of May 3, and June 4, 1976, are allowed.

5. That plaintiff's motion to reconsider the dismissal of the State of North Carolina, is denied.

ORDER

On July 31, 1976, an order was entered denying motions of various defendants for dismissal. Defendants filed motions for reconsideration of the order; a hearing has been conducted; upon reconsideration the court is of the opinion that the original order was in error; the motions of the Schenley defendants and of the Mecklenburg County Board of Alcoholic Beverage Control to dismiss are allowed for reasons hereinafter stated; this leaves a state claim only as to which there is no diversity; the other questions addressed to discovery, class action and evidence are therefore moot; and the entire action as to all defendants is hereby dismissed.

A brief review may be in order.

Plaintiff alleges that his intestate, Eural Frank Abernathy, died because of drinking too much good whiskey. The whiskey was alleged to be Ancient Age Bourbon, manufactured by the Schenley defendants and sold by the State ABC Board defendants. Plaintiff says that the decedent drank a substantial though not excessive amount (a pint or so) of Ancient Age Bourbon throughout one evening. He died as a result from "acute ethanol poisoning."

Plaintiff says that decedent did not know that drinking too much alcohol can be fatal; that people who sell whiskey should be required to label the bottles with a warning that whiskey can cause acute ethanol poisoning and death; that failure to label violates North Carolina statutes and federal statutes; that a civil right of action therefore arises and that defendants are responsible for the decedent's wrongful death.

The federal portion of the claims rests upon two grounds:

■ The first is the Consumer Products Safety Act, 15 U.S.C. §§ 2051 *et seq.* This act sets up a Consumer Products Safety Commission; authorizes issuance of regulations for the labeling of consumer products and for other safety standards; and authorizes suits in equity and suits for damages against manufacturers violating the contemplated regulations.

The trouble with reliance upon the Consumer Products Safety Act is that it does not apply to food; and beverage alcohol is a food within the meaning of the pertinent statutes. 15 U.S.C.A. § 2052 provides, in part:

"(a)   For purposes of this chapter:

(1)   The term 'consumer product' means any article, or component part thereof, produced or distributed (i) for sale to a consumer   .   .   ., or (ii) for the personal use, consumption or enjoyment of a consumer   .   .   .; but such term does not include—

(I)   food. The term 'food', as used in this subparagraph means all 'food', as defined in section 321(f) of Title 21, including   .   .   .   [other products as defined in various sections of Title 21]."

21 U.S.C.A. § 321(f) defining "food" for the purposes of that act, provides:

"(f)   The term 'food' means (1) articles used for food or drink for man or other animals, (2) chewing gum, and (3) articles used for components of any such article."

Bourbon whiskey is obviously included among "articles used for food or drink for man" within the above definition; and I conclude that the Consumer Products Safety Act gives rise to no cause of action.

■ The second statute alleged to give rise to a federal claim is 27 U.S.C. § 205(e) and its accompanying regulation, 27 C.F.R. § 5.42(a)(1).

27 U.S.C. § 205(e) provides, in part, that it is unlawful to sell, ship, deliver, or to introduce in or to receive from interstate commerce, bottled alcoholic beverages unless they are labeled in conformity with such regulations prescribed by the Secretary of the Treasury as will prevent deception of the consumer as to the nature and quality of the products and as will provide the consumer with adequate information as to the identity and quality of the products.

The regulations with respect to labeling are contained in 27 C.F.R. §§ 5.1 through 5.56. § 5.55 requires that a bottler of distilled spirits secure a certificate of label approval from the Director, Alcohol, Tobacco and Firearm Division, Internal Revenue Service. The whiskey involved in this action was bottled and sold with a label previously approved by the Director, as shown below:

FRONT

BACK

The Board contends that the prior approval of the Ancient Age label by the Director would preclude a determination that the label contained' any statement prohibited by § 5.42, and that in the clear absence of any violation of 27 U.S.C. § 205(e) and 27 C.F.R. § 5.42, an inquiry into the legislative intent with respect to private rights of action is unnecessary.

27 C.F.R. § 5.42(a)(1) provides, in part: "(a) Bottles containing distilled spirits, or any labels on such bottles, . . . shall not contain:

(1) Any *statement* that is false or untrue in any particular or that, . . . tends to create a misleading impression." (Emphasis added.)

If the statute, 27 U.S.C. § 205(e), were a direct requirement as to labeling of merchandise, the plaintiff would have a reasonably strong case; and the absence of a legislative history showing a direct intent to confer private right of action upon injured persons would not be controlling. If the Secretary of the Treasury, pursuant to § 205(e), had issued a regulation requiring that packaged intoxicants bear a warning of the dangers of ethanol poisoning, it might fairly be inferred through such regulation pursuant to the statute that a private right of action naturally arose.

The trouble is that the labeling provisions of § 205(e) are not self-executing; they only come into effect when prescribed and only to the extent prescribed "by the Secretary of the Treasury with respect to packaging, marking, branding and labeling . . . ."

The Secretary of the Treasury has made no ruling which requires that the danger of drinking too much good whiskey be published on the bottles and packages; and in the absence of a statutory requirement or administrative regulation, it is this court's conclusion that Chapter 27 does not give rise to the private right of action asserted.

There is no evidence that the labeling was misleading except by the use of the word "mellowness" in the label's description of the contents. While it may be getting a little too deep into the facts, it appears fair to note that the plaintiff's intestate is not alleged to have been a neophyte in the drinking business, and that to anyone who has tasted bourbon whiskey of any stripe the word "mellowness" is a term totally meaningless except in the context of whiskies generally. I am unable to conclude that the use of this frequently used word in describing Kentucky bourbon is the type of representation which could amount to a violation of the pertinent statutes or regulations.

In short, it does not appear that a private right of action arises under 27 U.S.C. § 205(e).

All other pending questions and motions being hereby rendered moot, therefore, despite the fact that as a matter of public policy it could well be that legislatures should require more specific labeling concerning the dangers of beverage alcohol, I do not believe it is the business of this court to enact such legislation, and so IT IS ORDERED, ADJUDGED AND DECREED, that this action be and it is hereby dismissed.